# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BLAKE GORDON, | ) |
| *Petitioner*, | ) |
| v. | ) No. 18 C 5020 |
| ALEX JONES*, | ) Judge Virginia M. Kendall |
| Warden, Menard Correctional Center | ) |
| *Respondent*. | ) |

## MEMORANDUM OPINION AND ORDER

Blake Gordon, a state prisoner, petitions *pro se* for a writ of habeas corpus under 28 U.S.C. § 2254. (Dkt. 1.) In his petition, Gordon raises seven constitutional claims. He contends that: (1) the trial court erred by admitting his police statement; (2) the prosecution asked its witness a leading question; (3) the trial court judge took on the role of the prosecutor; (4) the trial judge failed to state that the defendant is presumed innocent, overruled the petitioner's repeated objections, and answered questions for the prosecution's witness; (5) he received ineffective assistance of counsel when his trial attorney failed to both "investigate into the allegations of first degree murder" and call character witnesses; (6) he received ineffective assistance of counsel when his appellate attorney failed to raise an ineffective counsel claim

---

* Because Alex Jones is now the Acting Warden of Menard Correctional Center, he automatically substitutes in as the respondent. Fed. R. Civ. P. 25(d).

against his trial attorney; and (7) the trial judge failed to advise Gordon of his right to a speedy trial, making the "continuance … not by agreement." (Dkt. 1 at 6-6b.)

All claims except the fifth are procedurally defaulted. Gordon failed to submit these claims for one complete round of State appellate review. The fifth claim, ineffective assistance of trial counsel, does not overcome the highly deferential standard of habeas review. Therefore, this Court denies the petition.

## BACKGROUND

In 2011, a jury convicted Gordon of the first degree murder of Dominique Conyers and the attempted first degree murder of Victor Barton in connection with an August 2008 shooting in Cook County, Illinois. Gordon, who was on mandatory supervised release at the time of the shooting and has three prior convictions, received consecutive 50- and 10-years' sentences in the Cook County Circuit Court. *See People v. Gordon*, 2017 IL App (1st) 151506-U, 2017 WL 3926908, at *1 ("*Gordon II*"), *appeal denied*, 94 N.E.3d 642 (Ill. 2018).

### I. Facts

The evidence at trial established that during the overnight hours between August 19 and 20, 2008, Gordon fired multiple gunshots at a dark blue vehicle containing rival gang members Conyers, Barton, and Tracy Smith. *See People v. Gordon*, 2014 IL App (1st) 110664-U, 2014 WL 2442570, at *1 ("*Gordon I*"), *appeal denied*, 20 N.E.3d 1258 (Ill. 2014). Conyers, sitting in the backseat, died from his gunshot wounds; Barton, in the front-passenger seat, was injured. *Gordon II*, 2017 WL 3926908, at *1. Gordon received a 50-year sentence for the first degree murder

2

of Conyers and a consecutive 10-year sentence for the attempted first degree murder of Barton. *Id*.

Gordon testified at trial that he acted in self-defense. *Id*. Gordon testified that at 10:35 p.m. on the night of the shooting, a dark blue vehicle drove past him a block away from where the shooting ultimately occurred. *Gordon I*, 2014 WL 2442570, at *3. The vehicle's occupants flashed gang signs that were disrespectful to Gordon's gang, the Mafia Vice Lords. *Id*. Around midnight, a dark blue vehicle containing Smith, Conyers, and Barton approached Gordon's location with its lights off, which led Gordon to believe that a drive-by shooting was about to occur. *Id*. at *4. Gordon further testified that he saw someone in the car's backseat pointing a silver and black gun in his direction. *Id*. Fearing for his life, Gordon ran to a nearby porch, retrieved a gun, and fired it multiple times at the dark blue vehicle. *Id*.

After Gordon testified, his lawyer sought to bolster the self-defense theory by proving Smith's propensity for violence. To that end, Gordon's lawyer tried to call a police officer, Officer McDermott, to testify about his arrest of Smith on January 19, 2010. *Id*. Immediately prior to that arrest, as Officer McDermott pursued Smith on foot, Smith tossed a handgun to his cousin and told his cousin to shoot Officer McDermott. *Id*. However, the trial court excluded Officer McDermott's testimony for three reasons: (1) Smith's confrontation with Officer McDermott occurred after Gordon's 2008 shooting; (2) Smith was not a victim of Gordon's 2008 shooting; and (3) Gordon did not testify that Smith was the initial aggressor in the 2008 shooting. *Id*.

3

Gordon's lawyer also examined Jeremy Powell, who witnessed the shooting. *Id.* at *2. Powell testified to Gordon's self-defense theory and Conyers' propensity for violence, but cross-examination revealed that Powell's trial testimony contradicted his statements to the grand jury. *Id.* at *3. When the prosecution attempted to introduce the grand jury transcript to impeach Powell, Gordon's lawyer objected on the ground that the impeachment was already perfected. *Id.* The trial court agreed. *Id.*

In the subsequent presentence investigation report (PSI), the defense introduced several mitigating facts. According to the PSI, Gordon was raised by his mother. *Gordon II*, 2017 WL 3926908, at *1. He attended school only as far as the eighth grade and achieved a fourth-grade proficiency. *Id.* Gordon attempted suicide approximately 10 times and, in 2010, attempted to hang himself with his bed sheets. *Id.* He completed a drug rehabilitation program while incarcerated and did not consume alcohol. *Id.* Gordon has two children and the PSI stated that he enjoyed spending time with them. *Id.* The PSI also stated that Gordon was a member of the Mafia Vice Lords gang. *Id.*

At sentencing, the State raised several aggravating arguments. Gordon was on "parole" at the time of the shooting and had three prior felony convictions. *Id.* at *2. The State argued that Gordon "love[d] guns" and that he committed a "senseless gang-related murder." *Id.* Conyers' mother also read an impact statement. *Id.* at *1. She stated that Conyers' unborn son would never have a father, while Gordon would have "the opportunity and pleasure" to see his children grow. *Id.*

4

Gordon's trial counsel responded that he should receive the minimum sentence "under the circumstances." *Id.* at *2. He was a student with special-education needs who tested at a fourth-grade proficiency level. *Id.* As for Gordon's prior convictions, the defense stated that one was for gun possession and that he was sentenced to "boot camp" for the other two. *Id.*

At sentencing, the trial court stated that Gordon had "chances upon chances to no avail." *Id.* The court outlined Gordon's criminal history: several juvenile cases, several gun-related convictions, and this 2008 shooting of Conyers while on "parole." *Id.* The court noted the effect of Gordon's actions on both his family and Conyers'. Gordon received a sentence of 50 years for first-degree murder and 10 years for attempted first-degree murder. *Id.* at *1.

## II. Procedural History

Between 2014 and 2017, Gordon appealed the trial court's holdings twice, first directly and then in *pro se* postconviction proceedings. The state appellate court affirmed the trial court's rulings both times. *See Gordon I*, 2014 WL 2442570, at *1; *Gordon II*, 2017 WL 3926908, at *1. Each appeal gave rise to a PLA; the Illinois Supreme Court denied both. *See* 20 N.E.3d 1258 (Ill. 2014) (denying *Gordon I*); 94 N.E.3d 642 (Ill. 2018) (denying *Gordon II*). Finally, in 2018, Gordon filed this petition.

### A. Direct Appeal

Gordon appealed his trial court conviction, raising two arguments. First, he contended that the trial court abused its discretion by barring evidence related to

5

Smith and Conyers' propensity for violence. *Gordon I*, 2014 WL 2442570, at *1. Second, he asserted that the trial judge erred by admitting a witness's grand jury testimony as substantive evidence and allowing the prosecutor to misrepresent that evidence during closing arguments. *Id*. The state appellate court affirmed Gordon's conviction. *Id*.

Gordon's argument for Smith's propensity for violence rested on Officer McDermott's excluded testimony. *Id*. at *4. However, the state appellate court noted that Officer McDermott testified about violent acts Smith committed in 2010, 17 months after the 2008 shooting. *Id*. Therefore, the court found that Officer McDermott's testimony was not relevant to proving Smith's propensity for violence prior to the 2008 shooting. *Id*. at *5. The court explained that, given the irrelevance of the testimony, its exclusion did not reach the arbitrary, fanciful, or unreasonable threshold for abuse of discretion. *Id*. (citing *People v. Rivera*, 986 N.E.2d 634, 646 (Ill. 2013)).

In the same appeal, Gordon argued that the trial court abused its discretion when it sustained the State's objection to Powell's testimony that Conyers had previously shot him. *Id*. at *6. However, the state appellate court held that Gordon forfeited this argument by failing to include it in his motion for a new trial. *Id*.

Gordon alternatively argued for two theories of ineffective assistance of counsel. Gordon argued that his trial attorney failed to argue for the admission of Powell's testimony and failed to make an offer of proof as to Powell's testimony. *Id*. The court, citing *Strickland v. Washington*, 466 U.S. 668 (1984), held that counsel's

6

strategy was neither unreasonable nor prejudicial to Gordon. Though Powell's testimony spoke to Conyers' propensity for violence, the court held that Powell was not a credible witness. *Gordon I*, 2014 WL 2442570, at *7. Powell was affiliated with the same gang as Gordon, had prior convictions, and his prior testimony to the grand jury was inconsistent. *Id.* Given this history, the appellate court held that Powell's testimony would not have been a persuasive vehicle for introducing evidence of Conyers' propensity for violence to the jury and concluded that it was not reasonably probable that Powell's testimony would have changed the outcome of Gordon's trial. *Id.* Thus, the appellate court held that Gordon's trial counsel's failure to argue in support of Powell's testimony did not likely prejudice Gordon, and he was not denied effective assistance of counsel. *Id.*

The appellate court also held that Powell's grand jury testimony was properly admitted as substantive evidence. *Id.* Under 725 ILCS § 5/115-10.1(c)(1), the grand jury testimony was admissible because Powell's grand jury testimony was inconsistent with his trial testimony, Powell was subjected to cross-examination on the grand jury testimony, and he made the grand jury testimony under oath. *Id.*

Following the appellate court's ruling, Gordon filed his first petition for leave to appeal (PLA) to the Illinois Supreme Court. In the PLA, Gordon argued that the trial court erroneously applied Illinois Rule of Evidence 405 when it excluded evidence of the surviving victim's propensity for violence. (*See* Dkt. 13-6.) On September 14, 2014, the Illinois Supreme Court denied the PLA. *See People v. Gordon*, 20 N.E.3d 1258 (Ill. 2014).

## B. Collateral Attack

In January 2015, Gordon brought nine claims in a *pro se* postconviction petition, arguing, among other things, ineffective assistance of trial counsel for failing to call family character witnesses at sentencing. *Gordon II*, 2017 WL 3926908, at *2. Gordon attached to the petition the supporting affidavits of his mother, his mother's fiancé, and his godmother. *Id.* The trial court summarily dismissed the petition as "frivolous" and "patently without merit." *Id.* (citing *People v. Hodges*, 912 N.E.2d 1204, 1209-10 (Ill. 2009)) (a court will issue a summary dismissal of a postconviction petition as frivolous or patently without merit when the petition has no arguable basis in fact or law).

Gordon appealed the summary dismissal and argued that his trial counsel failed to provide effective assistance by neither investigating nor presenting the potentially mitigating testimony of character witnesses at sentencing. *Gordon II*, 2017 WL 3926908, at *3. Gordon claimed that the testimony would show Gordon's "rough childhood in a single-parent home" and his "changes for the better when he became a father." *Id.* He argued that the testimony would have contributed to a lesser sentence. *Id.*

The appellate court summarized Gordon's three affidavits similarly but rejected his conclusion. As the court explained, Gordon "was raised by a single mother, had begun to make positive changes to his life since becoming a parent, and was needed to parent his children." *Id.* However, the affidavits' mitigating information was cumulative of the facts in the PSI. *Id.* The appellate court therefore

8

held that the absence of the additional testimony did not establish the prejudice necessary to prevail on an ineffective assistance of counsel claim. *Id.; see also Strickland*, 446 U.S. at 693-95 (a defendant must show that counsel's representation prejudiced him and was objectively unreasonable to prove ineffective assistance); *People v. Jarnagan*, 506 N.E.2d 715, 721 (Ill. App. Ct. 1987) ("Failure to call or investigate a witness whose testimony is cumulative does not demonstrate ineffective assistance of counsel.").

The appellate court also noted that Gordon's trial counsel presented other mitigation arguments at sentencing. *Gordon II*, 2017 WL 3926908, at *3. Among them, trial counsel asserted that Gordon tested at the fourth-grade level and was a special education student—thus, trial counsel did not neglect a mitigation strategy altogether and pursued a strategy within the reasonable range of professional norms. *Id.*

Finally, the appellate court considered the effect of the mitigating evidence in the context of the "nature and amount of evidence in aggravation." *Id.* at *4; *see also People v. Simon*, 22 N.E.3d 1248, 1265 (Ill. App. Ct. 2014). Given the aggravating evidence of Gordon's prior gun-related convictions and his "parole[d]" status at the time of the shooting, the court reasoned that the mitigating evidence would not have "tipped [the scale] in defendant's favor." *Gordon II*, 2017 WL 3926908, at *4 (quoting *People v. Easley,* 736 N.E.2d 975, 997 (Ill. 2000)). The appellate court rejected Gordon's appeal for ineffective assistance of trial counsel and affirmed the trial court's summary dismissal of his *pro se* postconviction petition. *Id.*

9

Gordon filed his second PLA to the Illinois Supreme Court on the same ineffective assistance of trial counsel theory. (*See* Dkt. 13-14.) On January 18, 2018, Illinois Supreme Court denied the PLA. *See People v. Gordon*, 94 N.E.3d 642 (Ill. 2018).

## C. Habeas Petition

After the Illinois Supreme Court denied Gordon's second PLA, Gordon petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. He raised the same ineffective assistance of counsel claim from the second PLA along with six other claims.

## **STANDARD OF REVIEW**

28 U.S.C. § 2254 governs federal habeas corpus petitions by state prisoners. Federal habeas courts look to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which limits a federal court's ability to overturn state court judgments under § 2254. Following § 2254(d), a federal habeas court will not overturn a state court judgment unless it "resulted in a decision that was contrary to, or involved an unreasonable application of … clearly established" Supreme Court precedent. *See Shoop v. Hill*, 139 S. Ct. 504, 506 (2019) (per curiam). To prove that a state court decision was contrary or unreasonable, a state prisoner must show that the decision was "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Burt v. Titlow*, 571 U.S. 12, 19-20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). The standard is strongly

10

deferential to state court rulings and "erects a formidable barrier" for state prisoners seeking federal habeas relief. *Id.*

*Strickland v. Washington* set the clearly established Supreme Court precedent for ineffective assistance of counsel cases. 466 U.S. 668 (1984). Following *Strickland*, Gordon bears the burden of showing that his counsel's representation fell below an objective standard of reasonableness (performance prong) that prejudiced his defense (prejudice prong). *Strickland*, 466 U.S. at 687-88, 693. In assessing the performance prong, the Court will first ask "whether, in light of all the circumstances, [counsel's] identified acts or omissions were outside the wide range of professionally competent assistance." *Harper v. Brown*, 865 F.3d 857, 860 (7th Cir. 2017) (quoting *Strickland*, 466 U.S. at 690). The prejudice prong directs the Court to assess whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 860-61 (quoting *Strickland,* 466 U.S. at 694). "Judicial scrutiny of counsel's performance must be highly deferential" and there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 689-90.

Thus, when a state prisoner triggers both the AEDPA and *Strickland* in his federal habeas appeal, he faces two layers of deference in favor of the state court's judgment. *Lee v. Avila*, 871 F.3d 565, 571 (7th Cir. 2017).

## **ANALYSIS**

Gordon's petition raises seven claims under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. He argues five instances of due

process violations arising from trial court error. Namely, Gordon contends that the trial court erred when it: (1) admitted his police statement, which he claims was elicited through intimidation; (2) permitted the prosecution to ask its witness a leading question; (3) showed prejudice in taking on the role of a prosecutor; (4) failed to state that Gordon was presumed innocent, answered questions for the prosecution, and allowed the prosecution to change its narrative; and (5) failed to admonish Gordon of his rights to a speedy trial. Additionally, Gordon argues two instances of ineffective assistance of counsel—that his trial counsel was ineffective for failing to call mitigating witnesses and that his appellate counsel should have raised the ineffectiveness of his trial counsel.

Before analyzing the merits of Gordon's petition, the Court must first consider whether Gordon has cleared § 2254's threshold for procedural default by presenting his claim for one complete round of review in state court. *Crutchfield v. Dennison*, 910 F.3d 968, 972 (7th Cir. 2018), *cert. denied*, 139 S. Ct. 1587 (2019) (citing *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017)).

## I. Procedural Default

A state prisoner may raise a federal habeas appeal only after he has exhausted his claims through one full review in his state court's appellate system. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Under § 2254(c), "an applicant [state prisoner] shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." In a two-tiered state appellate system like

Illinois, the state prisoner must exercise his right to direct appeal in the appellate court and to *raise* a petition for discretionary review to the state supreme court. *O'Sullivan*, 526 U.S. at 845. The state supreme court need not grant the petition for the state prisoner to exhaust his state-court remedies. *Id.* But the state prisoner must have followed the available procedure and given the state supreme court the chance to review his claim. *Id.*

Otherwise, the federal habeas appeal would offend the doctrine of dual sovereignty enjoyed by state and federal courts. *Burt,* 571 U.S. at 19. State courts have the duty and authority to safeguard constitutional rights equal to that of federal courts. *Id*. (citing *Trainor v. Hernandez*, 431 U.S. 434, 443 (1977)). Thus, if a state's lower court conviction violates the constitution, the appellate courts of that state should have an opportunity to correct it. *O'Sullivan*, 526 U.S. at 845. It would be "unseemly" for a federal court to intervene before the state appellate process had run its course. *Davila*, 137 S. Ct. at 2064 (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)). Thus, the exhaustion requirement forestalls any friction between state and federal courts, preserving their dual sovereignty. *O'Sullivan*, 526 U.S. at 845.

Here, Gordon must have raised all seven claims in his federal habeas petition through Illinois' two-tiered appellate system to satisfy his procedural requirement. In other words, any claim Gordon did not present for review to the Illinois Supreme Court in a PLA will fail for procedural default.

Gordon submitted two PLAs to the Illinois Supreme Court. In the first PLA in 2014, he argued that the trial court erroneously applied Illinois Rule of Evidence 405,

13

but that issue is not raised in Gordon's habeas petition. In the second PLA, Gordon raised the issue of ineffective assistance of trial counsel for failing to call mitigating witnesses. When the Illinois Supreme Court denied that PLA in 2018, Gordon effectively exhausted the remedies available to him in state court for that claim only. Therefore, the Court will consider the merits of the ineffective assistance of counsel claim. Gordon failed to exhaust the other six claims in his habeas petition because he did not submit them to the Illinois Supreme Court in either of the two PLAs. Those six claims fail for procedural default, which precludes their review by this Court.

Gordon does not argue for either of the two exceptions to procedural default, and neither applies here. *See Blackmon v. Williams*, 823 F.3d 1088, 1099 (7th Cir. 2016) (the two procedural default exceptions are (1) prejudice stemming from the default and (2) that denial of relief would constitute a miscarriage of justice).

## II. Ineffective Assistance of Trial Counsel

Clear of § 2254's procedural hurdles, Gordon's fifth claim for ineffective assistance of trial counsel faces two layers of deference. As noted above, this Court is considerably deferential to state court judgments in both § 2254 and *Strickland* cases. In order to overcome the presumptive deference in this case, Gordon must show that the state court's decision is "substantially different" from clearly established Supreme Court precedent. *Laux v. Zatecky*, 890 F.3d 666, 674 (7th Cir. 2018) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)). To prevail, Gordon must show that his trial counsel's performance fell so far "outside the wide range of

14

reasonable professional assistance" as to prejudice Gordon's case. *Strickland*, 466 U.S. at 689. He has not done so.

Gordon argues that his trial counsel was constitutionally ineffective for not calling witnesses whose mitigating testimony could have resulted in a lower sentence. According to Gordon, the failure to call three witnesses amounts to a failure to properly prepare a defense. (Dkt. 16 at 7-8.) He argues that he should have received a second-degree murder sentence instead of first-degree murder. (*Id.* at 9.)

The state's brief opposing Gordon's petition echoes the reasoning of the state appellate court. The state argues that the mitigating testimony would have been cumulative of the information presented in the PSI and would not have had an impact on the sentence given the aggravating evidence against Gordon. (Dkt. 12 at 5.) Further, the state argues that the appellate court reasonably applied existing Supreme Court precedent regarding mitigating evidence in cases of *Strickland* claims. (*Id.* at 6.)

For ineffective assistance of counsel claims, a court should begin with the prejudice prong if it fails more easily, and then, if necessary, move on to the performance prong. *Strickland*, 466 U.S. at 670. Following common practice in this Circuit, the Court will start with the prejudice prong, *see, e.g.*, *Amerson v. Farrey,* 492 F.3d 848, 851 (7th Cir. 2007), and will consider the performance prong only if Gordon satisfies his prejudice prong burden. *Strickland*, 466 U.S. at 670.

### A. Prejudice Prong

Under the prejudice prong, Gordon must prove a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. In other words, Gordon must establish a reasonable likelihood that he would have received a different sentence had his trial counsel called the proposed mitigating witnesses at sentencing.

This Court will find prejudice if the existing and additional mitigating testimony together outweigh the total aggravating evidence that led to Gordon's sentence. *Ward v. Neal*, 835 F.3d 698, 703 (7th Cir. 2016). The omission of evidence prejudiced Gordon if it would have had "pervasive effect" on the inferences gleaned at trial. *Strickland*, 466 U.S. at 695-96. However, if the omitted mitigating evidence is just cumulative—repeating facts presented at trial—then it would not have reasonably led to a different sentence. *Ward*, 835 F.3d at 703-04. Cumulative evidence does not alter the evidentiary picture, so omitting it is not prejudicial. *Id.*

In *Ward*, the defendant received a death sentence for murder committed while raping his victim. *Id.* at 704. The defendant appealed on ineffective assistance of counsel grounds for his trial attorney's failure to adequately investigate and present mitigating testimony. *Id.* at 702. That testimony would have shown that the defendant was a "well-behaved and thoughtful child" with a close relationship to his grandfather and some psychological problems. *Id.* at 703. The Seventh Circuit affirmed the trial court and all lower-court decisions holding that Ward was not prejudiced by his lawyer's strategy. *Id.* at 704. First, the mitigating testimony at

issue was cumulative of the evidence presented at trial, and second, the mitigating testimony did not outweigh the "mountain of stark [aggravating] evidence" that the defendant "raped, tortured, and murdered" an adolescent girl. *Id*.

Here, Gordon's prejudice claim fails for the same reasons as the defendant's in *Ward*. First, Gordon's additional mitigating evidence is cumulative of facts already presented to the sentencing court in the PSI. The sentencing court already considered that Gordon had a difficult upbringing and was a father. Adding more information to that effect would not have altered the evidentiary picture at sentencing. Since the omitted testimony would not have reasonably changed Gordon's sentence, it did not prejudice his case.

Second, even if the omitted testimony substantially reinforced the mitigating facts in the PSI, it does not overcome the mountain of aggravating evidence. Testimony about Gordon's improvements since becoming a father would not change the fact that Gordon continued to be a member of the Mafia Vice Lords. At the time of the shooting, Gordon was consorting with other gang members, including Powell, a convicted felon, and had access to a firearm that he chose to use. All the while, Gordon was on mandatory supervised release. Even if Gordon did pledge to improve himself after becoming a father, his actions highlight continued unlawful behavior. Thus, the omission of the mitigating testimony did not prejudice Gordon's defense.

Since Gordon cannot establish prejudice, this Court will not consider the performance prong and the adequacy of his trial counsel's representation. *See Amerson*, 492 F.3d at 851 (citing *Strickland*, 466 U.S. at 697).

17

## Conclusion

The Court denies Gordon's petition for a writ of habeas corpus. Gordon procedurally defaulted six claims and failed to show ineffective assistance of counsel on the seventh.

The Court also declines to issue a certificate of appealability because Gordon failed to substantially show the denial of a constitutional right, or that reasonable jurists would debate, much less disagree, with this Court's resolution of Gordon's petition. *See* 28 U.S.C. § 2253(c)(2); *Peterson v. Douma*, 751 F.3d 524, 528 (7th Cir. 2014) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

_____
Virginia M. Kendall
United States District Judge

Date: April 8, 2020